United States District Court
Southern District of Texas
**ENTERED**
February 13, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Cesar F., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:23-cv-04150 |
| v. | § | |
| | § | |
| Martin O'Malley,[1] | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This appeal from an administrative ruling denying social security benefits was referred to the undersigned judge. Dkt. 9. After carefully considering the parties' cross-motions for summary judgment and briefs in support, Dkt. 10, 12, 13, the record, Dkt. 8, and the applicable law, it is recommended that Plaintiff Cesar F.'s motion for summary judgment (Dkt. 10) be granted and the Commissioner's motion (Dkt. 12) be denied. It is further recommended that the decision of the Commissioner of Social Security be vacated and that this matter be remanded for further administrative proceedings.

---

[1] Michelle King is the current acting Commissioner. But no request to substitute her has been made.

1

## Background

Cesar, who has a work history as a laborer and truck driver, was in a motor vehicle accident on October 25, 2019.  R.24, 28.  The accident resulted in spinal injuries that led to one surgery and a recommendation for a second surgery that Cesar could not afford.  R.546-49, 706-08.  During this period, Cesar began developing a variety of mental health symptoms.  R.709-12.  Cesar stopped working in May 2020.  R.39.

Cesar filed for disability insurance benefits and supplemental security income benefits on April 22, 2021, claiming a disability onset date of May 12, 2020.  R.59, 68.  He asserted the following impairments: depression, post-traumatic stress disorder, cognitive impairment, and back and neck injury.  R.59, 68.

The Commissioner denied Cesar's applications and a subsequent request for reconsideration.  R.36, 107, 112, 117, 122, 126, 129, 133, 141.  Cesar, through his non-attorney representative, requested a telephonic hearing before an administrative law judge ("ALJ").  R.126, 144, 147, 158, 167, 177-78.  At the ensuing hearing, Cesar and a vocational expert testified, and Cesar was represented by the same representative.  R.36-56.  After the hearing, the ALJ issued a decision outlining his findings.  R.15-35.

The ALJ found that Cesar met the insured status requirements and had not engaged in substantial gainful activity since the alleged onset date. R.21. Although the ALJ found that Cesar had severe impairments—depression, neurocognitive disorder, anxiety, lumbar spine disorder, status post cervical spine fusion and right shoulder impingement—he concluded that Cesar did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R.21-22.

The ALJ then formulated the residual functional capacity ("RFC"), finding that Cesar

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: occasional climbing of ramps, stairs; occasional stooping, kneeling, crouching, crawling, and balancing; no climbing of ladders, ropes, and scaffolding[.] [He should] avoid all exposure to unprotected heights and hazardous machinery[, and] overhead reach is limited to occasional on the right, frequent in all other directions[. He ] can understand, carry out and remember simple instructions; can respond appropriately to supervisors, coworkers, the public, usual work situations[;] and can deal with changes in a routine work setting.

R.23. The ALJ determined that, with this RFC, Cesar is unable to perform his past relevant work. R.28. But the ALJ found, in light of Cesar's age, education, work experience, and the RFC, that there are jobs that exist in significant

3

numbers in the national economy that Cesar can perform, such as document preparer, ticket counter, or escort vehicle driver.  R.29.  The ALJ therefore determined that Cesar is not disabled.  R.30.

Cesar unsuccessfully appealed the ALJ's decision to the Social Security Administration Appeals Council, which rendered the decision ripe for this Court's review.  *See* R.1-3; 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Legal Standard

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a scintilla, but it need not be a preponderance."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

4

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I.    Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the

claimant's RFC, which is used to evaluate steps four and five. *See id.* at 776

n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a

prior step that the applicant is or is not disabled, the evaluation process

stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of

proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir.

2017). At the fifth step, the burden of proof shifts to the Commissioner "to

establish the existence of other available substantial gainful employment that

a claimant can perform." *Id.* at 753-54.

## II.    **Although the ALJ properly considered most of the medical opinions, a legal error with regard to one medical opinion requires remand.**

Cesar challenges the ALJ's formulation of the RFC, arguing that it is

unsupported by substantial evidence and is a product of legal errors. Dkt. 10

at 13. Cesar specifically contends that the ALJ failed to build a "logic bridge"

between the medical record and his persuasiveness findings and did not credit

any medical opinion addressing Cesar's physical and mental functioning. *Id.*

The Commissioner argues that the ALJ appropriately considered all the

objective and subjective evidence, and that the RFC is adequately supported.

Dkt. 13 at 20.

The RFC is a predicate to steps four and five that determines "the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez*, 415 F.3d at 461-62). "The ALJ is responsible for determining an applicant's [RFC]." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2). In determining the RFC, the ALJ examines "all the relevant evidence in [an applicant's] case record." 20 C.F.R. § 404.1545(a)(1); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "The ALJ is not required to incorporate limitations in the RFC that [he] did not find to be supported by the record." *Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (quotation omitted).

When determining the RFC, the ALJ must evaluate the persuasiveness of "all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §404.1520c(b). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are

7

supportability and consistency. *Id.* (citing § 404.1520c(b)(2)). "[T]he ALJ is required to explain how he considered the supportability and consistency factors ...." *Id.* (quotation omitted).

Here, the ALJ determined that Cesar "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with a laundry list of exceptions. R.23. In making this determination, the ALJ considered Cesar's symptoms, medical evidence, and prior administrative medical findings. *Id.* The ALJ found that while Cesar's medically determinable impairments could reasonably be expected to cause his symptoms, Cesar's statements about the intensity, persistence, and limiting effects of his limitations were "not entirely consistent with the medical evidence and other evidence in the record ...." R.24.

The ALJ considered the opinions of Drs. Gayle Pitcher and Tracy J. Copp, psychological consultative examiners; Drs. Janet Anguas-Keiter and Nicole Mannis, state agency psychological consultants; Dr. Stephen I. Esses, a physician who treated and performed surgery on Cesar; Dr. Daryl K. Daniel, an internal medicine consultative examiner; and Drs. Lynn B. Green and Julie Shamma, state agency medical consultants. R.24-28.

Cesar's main challenges relate to the ALJ's persuasiveness findings for each of these professionals. *See generally* Dkt. 10. The Court will first review

the ALJ's consideration of the mental health professionals' opinions, along with other issues Cesar raises relating to the evaluation and application of these opinions, and it will then examine the ALJ's analyses of the medical doctors' opinions.

### A. The ALJ properly evaluated the mental health professionals' opinions about Cesar's mental limitations.

The ALJ found that Cesar has severe mental impairments—depression, neurocognitive disorder, and anxiety—and, taking those into account, noted in the RFC that Cesar "can understand, carry out, and remember simple instructions; can respond appropriately to supervisors, coworkers, the public, usual work situations[,] and can deal with changes in a routine work situation." R.23. Cesar asserts that the ALJ failed to explain what supported the mental portion of the RFC finding and that he specifically failed to provide more than a conclusory analysis of the opinions and failed to explain how the evidence supports Cesar's ability to perform the full range of unskilled work. Dkt. 10 at 20, 22. The Commissioner contends that Cesar is attempting to usurp the ALJ's role as fact-finder, arguing that the ALJ adequately explained why he found unpersuasive each mental health provider's opinion. Dkt. 13 at 13-16.

### 1.   Dr. Pitcher's opinions

The ALJ found the opinion of Dr. Pitcher, a psychological consultative examiner, not persuasive.  R.26.  Cesar asserts that the ALJ only provided conclusory analyses of Dr. Pitcher's opinions, did not analyze the consistency factor, and did not explain how the medical evidence supports the ability to perform the full range of unskilled work.  Dkt. 10 at 20-21.  The Commissioner contends that the ALJ gave a detailed analysis and thoroughly explained his findings.  Dkt. 13 at 13-14.

The Court finds that the ALJ appropriately considered the supportability and consistency factors when analyzing Dr. Pitcher's opinions. In considering "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  Similarly, with the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(2).

Here, the ALJ noted that Dr. Pitcher's opinion was "supported by a mental status examination of claimant ... [but] not consistent with the totality of evidence at the hearing level." R.26. While this statement alone is conclusory, as Cesar contends, the ALJ did not stop there. Rather, the ALJ described Dr. Pitcher's findings and opined, "Dr. Pitcher's conclusions regarding claimant's mental, adaptive and social limitations [are] at odds with the relatively normal observations recorded in the report." *Id.* In particular, the ALJ detailed Dr. Pitcher's own observations and found them inconsistent with Dr. Pitcher's conclusions. *Id.* This analysis reflects that the ALJ adequately considered and explained his findings for the supportability and consistency factors.

As noted, Cesar also contends that the ALJ did not explain how the medical evidence supports the ability to perform the full range of unskilled work. Dkt. 10 at 20. But because the ALJ did not find Dr. Pitcher's opinion persuasive after duly considering the supportability and consistency factors, the opinion has had no bearing on the ALJ's determination about Cesar's ability to perform unskilled work.

### 2.   Dr. Copp's opinions

The ALJ found the opinion of Dr. Copp, a psychological consultative examiner, somewhat persuasive. R.27. Cesar argues, similar to his

Dr. Pitcher argument, that the ALJ's analysis of Dr. Copp's opinions was conclusory and failed to explain how the medical evidence supports the ability to perform the full range of unskilled work. Dkt. 10 at 20-21. The Commissioner, on the other hand, asserts that the ALJ thoroughly contrasted the medical evidence with Dr. Copp's opinion. Dkt. 13 at 15. As the Commissioner notes, Fifth Circuit law entitles the ALJ to determine the examining physician's credibility. *Id.* (citing *Greenspan*, 38 F.3d at 237).

The Court agrees with the Commissioner. Dr. Copp diagnosed Cesar with depression due to another medical condition. *Id.* Dr. Copp opined that Cesar had some moderate and some mild impairments but could manage his affairs effectively and in his own interest. R.612. Like with Dr. Pitcher, the ALJ found that Dr. Copp's opinion was "supported by a mental status examination of claimant ... [but] not consistent with the totality of evidence at the hearing level." R.27. The ALJ noted that he limited Cesar to "simple work," agreeing with Dr. Copp that Cesar is "mildly socially impaired." *Id.* But the ALJ "found no evidence that [Cesar's] ability to handle normal pressures in a competitive environment is impaired," much less moderately impaired, as Dr. Copp had opined. *Id.* (discussing R.612). Nevertheless, the ALJ reasoned that this "limitation could be accounted for in a limitation to simple work." *Id.*

12

The ALJ's analysis represents an appropriate consideration of the consistency and supportability factors. The ALJ states that his limitation to simple work accounts for the opinion that Cesar is moderately impaired in his ability to handle normal pressures in a competitive environment, even if he did not agree with that conclusion. R.27. It is up to the ALJ to weigh the evidence. *See Greenspan*, 38 F.3d at 237.

### 3.    Drs. Anguas-Keiter's and Mannis's opinions

The ALJ found the opinions of Drs. Anguas-Keiter and Mannis, who are state agency psychological consultants at the initial and reconsideration level, not persuasive. R.27-28. Cesar contends that since the ALJ found the opinions of Drs. Anguas-Keiter and Mannis unpersuasive, these opinions could not form the basis of the RFC finding, so it is unclear how the ALJ concluded that Cesar could perform the full range of unskilled work. Dkt. 10 at 21-23. Cesar further contends that the ALJ failed to consider all the evidence including PHQ-9 assessments in the treatment notes, which supports the limitations proposed by Drs. Pitcher and Copp. *Id.* at 21-22. Cesar asserts that the failure to consider the PHQ-9 scores requires remand. *Id.* He insists that the ALJ simply did not explain the mental health portion of the RFC, arguing that proper consideration of the opinions of the psychological professionals,

especially the impact of Cesar's psychological conditions on his attention span, would have led to a finding of disability. *Id.* at 22-23.

The Commissioner asserts that the ALJ found that Cesar had severe depression and accounted for this in the RFC, so any argument that the ALJ did not consider Cesar's depression, which is what the PHQ-9 tests evaluate, is inaccurate. Dkt. 13 at 16. The Commissioner notes, moreover, that the ALJ assesses a claimant's work capacity after considering all the evidence, not just the medical evidence. *Id.* at 17 (citing *Ripley*, 67 F.3d at 557).

First, the Court finds no error in the ALJ's assessment of the psychological consultants' opinions. The ALJ discussed how the opinions were inconsistent with and not supported by other information in the record. When reviewing Drs. Anguas-Keiter's and Mannis's opinions, the ALJ noted that the opinions are supported by citation and reference to the record available at the time of review, but they were inconsistent with the totality of the evidence at the hearing level. R.28. As the ALJ explained, Cesar's "mental status examinations were relatively normal and stable" despite his mental health treatment, and at a March 10, 2021, visit, Cesar's "fund of knowledge was average, insight and judgment good, cognition grossly intact, through processing, linear and organized." R.28; *see* R.710 (report from initial psychiatric visit to Dr. Huiping Xu, in which the doctor reported that Cesar's

"fund of knowledge" was average). "[T]he ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *Greenspan*, 39 F.2d at 237 (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

Next, the Court agrees with the Commissioner that the ALJ did not err by not addressing the PHQ-9 assessments explicitly because the ALJ adequately explained the mental health portion of the RFC. A PHQ-9 test is merely "a screening device and not to be used solely to make a depressive disorder diagnosis." *Long v. Colvin*, 2017 WL 2889367, at *2 (E.D. La. July 7, 2017) (quoting *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 175 n.8 (E.D.N.Y. 2011)). The resulting score "is just one step in diagnosing and treating depression." *Id.* But here, the ALJ found that Cesar's depression *was* a severe impairment, R.21, as the Commissioner aptly notes, Dkt. 13 at 3. And the ALJ addressed reports from various practitioners about Cesar's level of concentration. *See* R.27 (noting that Dr. Copp, whose opinion the ALJ found somewhat persuasive, diagnosed Cesar with depressive disorder due to another condition); *id.* (reporting that Dr. Copp found that Cesar's concentration was moderately impaired); *id.* at 11 (addressing the state agency psychological consultants' findings about concentration). The ALJ had no obligation to recite the PHQ-9 test results when examining the medical

15

evidence, as a whole, and determining the claimant's ability to work.  *See Taylor*, 706 F.3d at 602-03; *see also Hall v. Barnhart*, 31 F. App'x 839, 839 (5th Cir. 2002) (per curiam) ("The ALJ is not required to recite every scrap of evidence which the claimant considers helpful to her case.").  Cesar has not identified any error with respect to the foregoing findings, which substantial evidence supports.

> **B.   The ALJ erred by not considering the persuasiveness of one medical opinion regarding Cesar's physical impairments.**

With respect to Cesar's physical condition, the ALJ found that Cesar has numerous severe impairments: lumbar spine disorder; cervical spine disorder, status post cervical spine fusion, and right shoulder impingement.   R.21. Taking those into account, the ALJ formulated an RFC that found Cesar capable of performing sedentary work except "occasional climbing of ramps, stairs; occasional stooping, kneeling, crouching, crawling and balancing; no climbing of ladders, ropes and scaffolding;  avoid all exposure to unprotected heights and hazardous machinery; overhead reach is limited to occasional on the right, frequent in all other directions."  R.23.  Cesar asserts that the ALJ improperly evaluated all the medical opinions relating to Cesar's physical limitations, failed to build a logic bridge between the evidence and persuasiveness findings, and did not rely on any medical opinions to fashion his RFC.  Dkt. 10 at 13.  The Commissioner contends the RFC does not have

to mirror a specific medical opinion and that, here, the ALJ "considered all the objective and subjective evidence of record, and substantial evidence supports the RFC assessment." Dkt. 13 at 19-20.

### 1. The ALJ properly evaluated Drs. Daniel's, Green's and Shamma's opinions.

Drs. Daniel, Green, and Shamma are medical consultants. R.27-28. Dr. Daniel is an internal medicine consultative examiner, Dr. Green was the state agency medical consultant at the initial level, and Dr. Shamma was the state agency medical consultant at the reconsideration level. *Id.* Cesar contends that the ALJ did not rely on the opinions of these doctors for his medical findings and did not explain how the evidence supported his RFC finding, making it "unclear what evidence supports the RFC finding given the Plaintiff testified to greater limitations." Dkt. 10 at 23. Cesar asserts that reversal is required because the ALJ rejected the only medical opinions in the record, interpreted the raw medical data himself, and imposed a different RFC. *Id.* (citing *Ferrel v. Kijakazi*, 2022 WL 17184426, at *4 (S.D. Tex. Oct. 11, 2022), *adopted by* 2022 WL 17184572 (S.D. Tex. Nov. 23, 2022)).

The Commissioner argues that the RFC does not have to mirror a specific medical opinion and, indeed, rarely does. Dkt. 13 at 17-19. The Commissioner notes that it is the ALJ's job to assess all the evidence, objective and subjective, and formulate an RFC based on that evidence. *Id.* at 18-19. Thus, according

17

to the Commissioner, Cesar's argument that the ALJ did not base the RFC on medical opinions is moot. *Id.* at 19.

The ALJ determined that Dr. Daniel's opinion was probative, but he did not evaluate it for persuasiveness because Dr. Daniel did not do a function-by-function analysis; however, the ALJ found the opinion relevant to the issues. R.27. The ALJ notes that Dr. Daniel found that Cesar's gait was slow, determined that Cesar did not have problems standing from a sitting position, and reported various measurements reflecting Cesar's strength and ability to move. *Id.*

The ALJ also determined that the opinions of Drs. Green and Shamma were not persuasive. R.28. The ALJ noted that Dr. Green did not provide her professional title, and that Dr. Green's and Dr. Shamma's opinions, although supported by citation and reference to the record, were inconsistent with the totality of evidence at the hearing level. *Id.*

As the ALJ acknowledged, Drs. Green and Shamma both found that Cesar could stand or walk about six hours out of an eight-hour day and could sit the same amount of time, but he was limited in his overhead reach to the right. R.62-63, 72-73, 84-85. They did not limit his kneeling, crouching, or crawling, and found he could frequently stoop and climb stairs and occasionally climb ladders, ropes, and scaffolds. R.84-85. They determined that his

maximum sustained work capacity was "light." R.66, 75, 88, 100. The ALJ noted that "[a]lthough claimant is not as limited as [he] allege[s], he continues to be limited by pain and limitation, and as he testified, back surgery is pending." R.28. Thus, the ALJ found the opinions of Drs. Green and Shamma unpersuasive because Cesar was more limited than they opined. *Id.*

The Court finds that the ALJ appropriately considered the consistency and supportability factors with regard to these opinions. He compared it with other evidence about Cesar's level of pain and found that Dr. Shamma's and Dr. Green's opinions were inconsistent with and not supported by the other evidence. While Cesar contends that it is unclear what evidence supports the RFC finding, the ALJ specifically states that back surgery is pending and that he believed Cesar's assertion that he continued to be limited by pain. It is proper for the ALJ to consider all the record evidence, not just the medical opinions.[2] *See* 20 C.F.R. §404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

---

[2] Moreover, the ALJ's decision to include *greater* limitations in the RFC than what Drs. Green and Shamma found means that Cesar cannot show that the ALJ's rejection of those physicians' opinions amounts to reversible error. *See, e.g.*, *Kashanchi v. Saul*, 2020 WL 5823154, at *19 (S.D. Tex. Sept. 11, 2020) ("Federal courts have rejected the notion that an ALJ commits reversible error merely by including more restrictions in [his] RFC assessment than the state agency doctors."), *adopted by* 2020 WL 5819898 (S.D. Tex. Sept. 30, 2020).

### 2.     The ALJ failed to consider all of Dr. Esses's opinions.

Dr. Esses, Cesar's treating physician, performed a surgery on Cesar's cervical spine on March 2, 2021, and he recommended a second surgery on Cesar's lumbar spine.[3]  R.533, 535, 543-44, 707.  On June 23, 2022, Dr. Esses opined that Cesar could not walk "any distance" and could not work, and he noted that Cesar's June 10, 2022, functional capacity evaluation "indicates he [was] only functioning at a sedentary-work classification."  R.529.

On July 15, 2022, Dr. Esses completed a checklist indicating that Cesar could not walk a block at a reasonable pace or use public transportation, could not climb ladders, balance, stoop, kneel, crouch, or crawl, could sit, stand, or walk at most an hour without interruption and at most three hours in one work day, had limited ability to reach, and various other limitations.  R.698-704. The only annotation to the form was a note that Cesar could not lift or bend and that he could walk less than one city block.  R.699, 703.

Dr. Esses saw Cesar again on April 17, 2023.  R.707.  At that time, he again opined that Cesar was unable to walk "any distance," and he could not lift or carry more than ten pounds, could not sit, stand, or walk more than one hour without interruption, his maximum sitting, standing, and walking was

---

[3] Cesar could not afford the second surgery.  R.529.

three hours, his walking was limited to less than one city block, and he was disabled.  R.707-08.

The ALJ specifically evaluated two of Dr. Esses's opinions in different sections of the decision.  R.26-27 (discussing Exs. 8F (June 23, 2022) and 18F (July 15, 2022)).  He found that Dr. Esses's June 2022 opinion was somewhat persuasive, and his July 2022 opinion was unpersuasive.  R.26-27.  The ALJ mentioned the April 2023 opinion when summarizing the medical evidence, *see* R.25 (citing Ex. 19F (April 17, 2023 opinion)), but he did not address it in his discussion about the persuasiveness of Dr. Esses's opinions, *see* R.26-27.

Cesar contends that the ALJ did not appropriately evaluate all of Dr. Esses's opinions, particularly those concerning Cesar's ability, or lack thereof, to perform sedentary work.  Dkt. 10 at 15-16.  The Commissioner asserts that the ALJ properly evaluated and adequately explained his findings regarding Dr. Esses's opinions.  Dkt. 13 at 7.

### a.   The ALJ properly evaluated Dr. Esses's June 23, 2022 opinion.

The ALJ determined that Dr. Esses's June 23, 2022 opinion was somewhat persuasive—particularly because Dr. Esses has "clinical familiarity with the claimant's condition"—but he found aspects of the opinions "at odds with the totality of the evidence at the hearing level."  R.26-27.  The ALJ agreed with the statement that Cesar is "limited to a maximum sustained capacity for

21

a range of sedentary work," but the ALJ found that there was no evidence to support Dr. Esses's opinion that the claimant could not "walk any distance." R.26. The ALJ also noted that when Dr. Esses saw Cesar on June 23, 2022, it was the first time Dr. Esses had seen Cesar in close to a year, and another medical provider had observed that Cesar's gait was steady with no assistive device needed in the interim. *Id.*

Cesar first asserts that the ALJ failed to apply the supportability and consistency factors when evaluating Dr. Esses's June 23, 2022 opinion about Cesar's inability to walk. Dkt. 10 at 15. The Commissioner contends that the ALJ explained why he was not fully persuaded by Dr. Esses's June 23, 2022 opinion, namely that Cesar's gait was steady with no use of an assistive device during a visit to a different medical provider on November 24, 2021. Dkt. 13 at 8. The Commissioner thus argues that the ALJ's determination that Dr. Esses's opinion from June 23, 2022, was "somewhat persuasive" is supported by and consistent with the record. *Id.*

The ALJ's opinion reflects that he applied the supportability and consistency factors appropriately when evaluating Dr. Esses's June 23, 2022 opinion about Cesar's ability to walk. The ALJ found portions of Dr. Esses's opinion persuasive because the physician had clinical familiarity with Cesar's condition, but found Dr. Esses's opinion about Cesar being unable to walk any

distance unpersuasive because Dr. Esses had not seen Cesar in a year and, in the meantime, another medical professional had observed Cesar walking with a steady gait. R.26-27; *see also* R.562 (November 24, 2021, record noting that Cesar's "[g]ait is steady, no assistive device used"). This analysis adequately explained why the ALJ concluded that Dr. Esses's opinion was not fully supported by nor fully consistent with the record. Such weighing of evidence when evaluating a claimant's own testimony is "precisely the kind[ ] of determination[ ] that the ALJ is best positioned to make." *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Cesar next contends that the ALJ's reasoning relating to Dr. Esses not seeing Cesar in a year is improper because Cesar's inability to pay for medical care cannot be used against him. Dkt. 10 at 16. ALJs are instructed to consider reasons that a claimant may not have sought regular treatment, such as being unable to afford treatment. *See* SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). But there is no indication that the ALJ's decision regarding the persuasiveness of Dr. Esses's June 2022 opinion was related to Cesar's financial condition. Rather, it was simply inconsistent with the opinion of a provider who had observed Cesar more recently. As the Commissioner aptly notes, although Cesar did not visit Dr. Esses, he had medical treatment between August 2021 and June 2022. R.454-59, 558-64. The ALJ's observation

23

about the lapse of time since Cesar had seen Dr. Esses simply Dr. Esses's opinion with other record evidence.

Cesar also asserts that the case should be remanded because the ALJ misread the June 23, 2022 opinion. Dkt. 10 at 15-18. The purported misreading is the ALJ's indication that he agreed with Dr. Esses's June 23, 2022 opinion that Cesar was only functioning at a sedentary-work classification. Dkt. 10 at 15. According to Cesar, however, the cited statement came from a June 2022 functional capacity evaluation, whereas Dr. Esses actually concluded that Cesar should be restricted to less than sedentary work. *Id.* The Commissioner responds that the ALJ accurately referenced the finding that Cesar was functioning at a sedentary-work classification because Dr. Esses's report references the relevant functional capacity evaluation and did not disagree with the results. Dkt. 13 at 10 (citing R.529).

The Court agrees with the Commissioner that the ALJ did not misconstrue the record when agreeing with the underlying statement in Dr. Esses's report. *See* R.26, 529. In fact, Dr. Esses's report explicitly states that "[t]he [June 10, 2022] functional capacity evaluation indicates that [Cesar] is only functioning at a sedentary-work classification." R.529. Dr. Esses even said he would "use the functional capacity evaluation as a guide" to complete any disability paperwork. *See id.* Although the ALJ did not further reference

24

the functional capacity evaluation, the ALJ had no obligation to do so.  *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam) (an ALJ need not "specifically cite each and every piece of medical evidence"). Cesar's claim of error is baseless.

b.   **The ALJ properly evaluated Dr. Esses's July 15, 2022 opinion.**

The ALJ found Dr. Esses's July 15, 2022 opinion, which is a checklist, unpersuasive.  R.26-27.  The ALJ opined that "Dr. Esses' opinion is not consistent with the totality of evidence at the hearing level.  There is no evidence that claimant is limited to walking less than 1 block without the use of a cane, nor is there any evidence … that siting [*sic*], standing and walking are limited to 1 hour at a time."  R.27.

Cesar asserts that the ALJ improperly cherry-picked the record and did not consider evidence from Dr. Esses's July 15, 2022 examination that supported disability.  Dkt. 10 at 18.  In addition, Cesar contends the ALJ's explanation of persuasiveness does not enable the Court to undertake a meaningful review because the ALJ does not identify any evidence contradicting the July 15, 2022 findings.  *Id*.  The Commissioner, however, responds that the July 15, 2022 opinion was a check-box form completed at the request of Cesar's representative and asserts that it is proper to find such an

opinion inadequately supported if it lacks narrative citations to clinical findings. Dkt. 13 at 10-11.

The Commissioner is correct. Courts generally look askance at checklists that "are not adequately supported by any narrative citations to clinical findings." *Brown v. Astrue*, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013); *see also Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (per curiam); *Gena R. v. Comm'r of Soc. Sec.*, 2022 WL 16924116, at *9 (S.D. Tex. Nov. 11, 2022). In addition, the ALJ's opinion details objective evidence contradicting Dr. Esses's checklist findings. Specifically, as the ALJ noted, while the form indicated that Cesar could not walk less than 1 block without the use of a cane and that he could not sit, stand, or walk more than 1 hour at a time, *see* R.27, a January 10, 2023 report states that Cesar walked with a limp but was ambulatory and his activity level was normal. R.25 (discussing Ex. 15F); R.611 (January 10, 2023 clinical interview record, noting that Cesar "was ambulatory and walked with a limp" and "[h]is activity level was normal"). The ALJ appropriately considered the consistency and supportability factors.

### c. The ALJ failed to evaluate Dr. Esses's April 17, 2023 opinion.

Dr. Esses examined Cesar again on April 17, 2023, and he provided more observations about Cesar's ability to perform certain work-related functions.

R.705-08. The ALJ cited Dr. Esses's April 17, 2023 "note" when discussing the medical record, stating that he was "aware of an April 17, 2023, Southwest Orthopedic Group, L.L.P., clinical note," and the ALJ briefly discussed the findings. R.25 (citing Ex. 19F/3). But the ALJ referred to this aspect of the record as a "note," and he did not evaluate its persuasiveness. *See* R.25-26.

Cesar asserts that Dr. Esses's April 17, 2023 findings are medical opinions, not just a note, and the ALJ failed to consider them. Dkt. 10 at 19. The Commissioner does not address this argument. *See generally* Dkt. 13.

Under 20 C.F.R. § 404.1513(a)(2), a "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: ...

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Here, on April 17, 2023, Dr. Esses provided the results of Cesar's tests like motor strength and range of motion, and thus assessed what he can do. He also addressed Cesar's ability to perform the physical demands of work, such as not being able to lift ten pounds and limiting his walking to less than one block. R.707-08. The Court thus finds that Dr. Esses's report from April 17, 2023 is an opinion under § 404.1513(a)(2).

The Social Security Administration explains how it articulates its consideration of medical opinions and prior administrative medical findings for claims made after March 27, 2017: "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b). This is subject to the following caveat:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this

28

> section, as appropriate.   We are not required to
> articulate how we considered each medical opinion or
> prior administrative medical finding from one medical
> source individually.

20 C.F.R. § 404.1520c(b)(1).

Under this guidance, the ALJ could have articulated how persuasive he found Dr. Esses's various opinions as a single unit.  But the ALJ separated his analysis of the June 23, 2022 opinion from the analysis of the July 2022 checklist, noting how persuasive he found each.  R.26-27.  The ALJ specifically cited the June 23, 2022 opinion in his persuasiveness analyses, stating that he found it somewhat persuasive, and discussed why.  Then, after discussing another medical provider's opinion, he cited the July 2022 checklist, found it unpersuasive, and explained his reasons for discounting it.  But the ALJ did not cite or discuss Dr. Esses's subsequent, April 17, 2023 opinion when examining the persuasiveness of all the medical opinions.  Thus, even if the ALJ meant for his persuasiveness finding regarding Dr. Esses's 2022 opinions to encompass the 2023 opinion, there is no way to determine if the ALJ found it somewhat persuasive or wholly unpersuasive.  Moreover, the ALJ's opinion does not discuss the supportability or consistency factors with regard to Dr. Esses's April 2023 opinions.

Although "[p]rocedural perfection in administrative proceedings is not required," *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam),

the ALJ must provide enough discussion to allow for "meaningful judicial review," *see Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  Here, the Court cannot discern how persuasive the ALJ found Dr. Esses's April 2023 opinion, making meaningful judicial review impossible.  The omission of a persuasiveness constitutes legal error.  *See Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) ("Since the ALJ's discussion is insufficient to meet the demands of 20 C.F.R. § 404.1520c(b)(2) insofar as the Court cannot undertake meaningful review of his finding, the ALJ committed legal error."); *see also Shugart*, 2022 WL 912777, at *3 ("[T]he ALJ considers the persuasiveness of medical opinions from different medical sources."); 20 C.F.R. 404.1520c(b)(2).

### 3.    <u>The error was prejudicial.</u>

Although the ALJ erred in failing to evaluate the persuasiveness of Dr. Esses's latest medical opinion, remand is unwarranted unless Cesar shows that the error was prejudicial.  *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).  "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'"  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

Cesar argues that the ALJ's omission is prejudicial because Dr. Esses's April 2023 opinion supports greater restrictions than the RFC reflects. *See* Dkt. 10 at 19. The RFC indicates Cesar can do sedentary work with certain limitations. R.23. Cesar asserts—citing all three of Dr. Esses's opinions, including the checklist that the ALJ found unpersuasive—that his lifting, carrying, sitting, and postural limitations prevent him from performing the full range of sedentary work. Dkt. 10 at 19. He does not explain why, specifically, a failure to consider the persuasiveness of the April 2023 opinion is prejudicial. Dkt. 10 at 19-20.

The April 2023 opinion provides a more recent determination that Cesar cannot walk "any distance," limits his walking to less than one city block, and indicates that Cesar could only sit, stand, or walk for one hour without interruption and his total sitting, standing, and walking was three hours. R.707-08. In contrast, the RFC limits Cesar to "sedentary work" with some limitations, such as occasional reaching on his right side. R.23.

Under the regulations, "sedentary work"

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

31

20 C.F.R. §404.1567(a).  The Social Security Administration explains how much sitting and standing this type of classification involves: "In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."  SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996).  This requirement far exceeds Cesar's three-hour maximum for sitting that Dr. Esses found in his April 2023 opinion.

Because Dr. Esses's April 2023 opinion supports greater limitations than those in the RFC, failure to evaluate the persuasiveness of his opinion when formulating the RFC was prejudicial.  While Dr. Esses seemingly agreed with the June 10, 2022 functional capacity evaluation determination that Cesar was functioning at a sedentary-work classification, Dr. Esses's more recent opinion that Cesar could not sit and stand more than three hours, if persuasive, could have altered the result.[4]  Remand is warranted because "it is conceivable that the ALJ could make a different administrative decision upon further review."

---

[4] The consultative medical providers did opine that Cesar could stand or walk about six hours out of an eight-hour day and could sit the same amount of time, R.62-63, 72-73, 84-85, but the ALJ found these opinions unpersuasive.  R.29.

*See Shugart*, 2022 WL 912777, at *4.   Accordingly, this case should be remanded for further consideration by the ALJ.[5]

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Cesar F.'s motion for summary judgment (Dkt. 10) be **GRANTED**, and that the Commissioner's motion (Dkt. 12) be **DENIED**.

It is further recommended that the decision of the Commissioner of Social Security be **VACATED**, and that this matter be **REMANDED** for further administrative proceedings.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 13, 2025, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

---

[5] This recommended disposition renders it unnecessary to reach Cesar's further contentions.  *See* Dkt. 10 at 23-24 (asserting that the ALJ did not rely on any expert opinions when forming the RFC).